## HAZARD *v.* SPEARS.

December, 1868.

After factors had informed their principals of the failure of a contract for the sale of the goods consigned, and of their having recovered possession of them at a distant place, and left them there with other agents of the principals for sale, the principals, for seven weeks after being fully informed of the facts, gave no intimation of objections, and did not communicate their intention to disavow the transaction until about eleven weeks after they were informed. *Held,* that these circumstances were sufficient proof of ratification.

To constitute the conversations and acts of the principals, with knowledge of the facts, a ratification, it is not material whether a ratification was contemplated or not.

George S. Hazard and Frank W. Fiske sued James Spears and James D. and Ezekiel M. McDonald, in the Buffalo superior court, to recover money paid.

The plaintiffs, being factors at Buffalo, and having received from defendants, who were pork packers in Indiana, a consignment of hams to be sold for defendants' account, at a limited price, contracted for the sale of the hams at the price limited, to one Perry. This sale was made through one Howe, Perry's agent. The terms were cash on delivery. After the hams had been put in transit for delivery to Perry at New York, and when plaintiffs had received only a part payment, Perry failed in business. This part payment was in fact made, not on account of the entire contract, but on account of a specified portion of the hams.

Plaintiffs, on learning of Perry's failure, rescinded the sale, and recovered possession of all the hams in the city of New York on their arrival there. After unsuccessful efforts to sell them in New York, they put them in the hands of Purdue & Ward (who were defendants' agents in New York), to be sold for defendants. They fixed no limit as to price. They immediately wrote to defendants stating fully these facts, except that they omitted to state that the part payment was not on account of the entire contract, but on account of a part only of the hams. The hams were sold in the market at a loss. After various

communications between the parties, which are sufficiently
stated in the opinion of HUNT, J., the plaintiffs brought this
action to recover the balance of certain advances which they
had made on the consignment. The defendants relied on their
objections that the final sale was not authorized by their in-
structions; that plaintiffs did not communicate fully the facts
in respect to the transaction of the first sale, and had misin-
formed defendants in respect to it, and that defendants had not
ratified the transaction. The plaintiffs relied principally on the
fact, that, although defendants were informed personally in the
middle of June, of all the circumstance of the transaction, and
were within thirty-six hours of plaintiffs by a daily mail,
they gave no intimation of dissent until August 8, and did
not communicate their intent to disavow the transaction until
September 5; and that this long delay was a clear adoption
of plaintiff's acts. The plaintiffs had settled with Purdue &
Ward on the final sale, and allowed the latter their commis-
sions thereon; and in their account against defendants on
which this action was brought they charged their own commis-
sion on their advances besides.

On the trial the judge instructed the jury that the letters put
in evidence did not show a ratification of the sale; but he left it to
the jury to determine whether the conversations in the middle
of June were a ratification, and instructed them that if they
found that they were, plaintiffs were entitled to receive not only
the balance of advances, but their commissions on the sum they
had advanced, and that both factors were entitled to a commis-
sion.

Plaintiffs had a verdict, judgment on which was affirmed at
general term. Defendants appealed.

*Benjamin H. Williams*, for defendants, appellants;—Insisted
there could be no ratification if neither party entertained the idea
of ratification at the time of the conversation; and that the
evidence showed defendants were ignorant of material facts,
and therefore had not ratified the sale. Citing 32 *Penn. St.*
340; Owings *v.* Hull, 9 *Pet.* 607; Seymour *v.* Wyckoff, 10
*N. Y.* (6 *Seld.*) 222; Nixon *v.* Palmer, 8 *N. Y.* (4 *Seld.*) 398;
*Dunl. Pal. Ag.* 171, 172; *Story on Ag.* 224–243; Brass *v.*

Worth, 40 *Barb.* 654; Copeland *v.* Mercantile Ins. Co., 6 *Pick.* 202; Bell *v.* Cunningham, 3 *Pet.* 69; Horsfall *v.* Fauntleroy, 10 *Barn. & C.* 755; Thorndyke *v.* Godfrey, 3 *Green.* 429. Also that it was error to allow commissions of both factors.

*John Ganson,* for plaintiffs, respondents;—Cited Prince *v.* Clark, 1 *Barn. & Cress.* 186, S. C., 8 *Eng. Com. L.* 80; Cornwall *v.* Wilson, 1 *Ves. Sr.* 509.

HUNT, Ch. J.—The sale of the hams in New York, at a lower price than that fixed by the defendants, and obtained by the plaintiffs in Buffalo, gives rise to the present controversy. The plaintiffs were limited in price by the order of the defendants. They were expressly directed not to sell them for less than seven and three-fourths cents per pound. The sale made in Buffalo was at that price, but the purchaser failed to pay, and the sale was rescinded. The expenses of the property to New York, and the sale there, together with the fall in price, produced the loss for which the amount of the verdict was given.

Immediately upon his return from New York, Mr. Hazard, one of the plaintiffs, wrote to the defendants, giving a full account of the transaction, and informed them that the hams had been left with Purdue & Ward, to dispose of to the best advantage. In the several letters, the defendants acknowledge the receipt of this information, and make no claim that they did not approve of the entire proceeding. The judge, at the trial, decided that these letters did not constitute a ratification of the transaction. The case does not furnish the ground for this decision. I presume it was from the fact, that it is assumed in each of the letters, that the one thousand eight hundred dollars paid was upon the purchase of the entire quantity of hams, and would go to reduce the loss that would arise from the entire sale. In truth, this sum was received in payment of a specific portion of the hams, one car-load, and would mitigate the loss upon that portion only, leaving the entire loss upon the remaining portion unprovided for. This would produce a great difference in the general result, and was an important fact in the case. The defendants' ratification, assumed from their failure to object, being based upon an erroneous understanding

of the facts, could not bind them. I think the ratification that might be supposed to arise from this view of the case must be abandoned.

The question then arises, did the conversation in June, 1861, between the defendant Spears and the plaintiff Hazard, furnish evidence, on which the jury are at liberty to find a ratification? By the letters already referred to, the defendants had been informed of the entire transaction, with the exception of the erroneous understanding on their part as to the one thousand eight hundred dollars already mentioned. They had been distinctly informed that the property was left with Purdue & Ward for sale, and without limit as to price. In the conversation now referred to, all the transaction is again rehearsed to Mr. Spears, the understanding as to the one thousand eight hundred dollars is now corrected, and he is informed that the property is left with the New York house for sale, without limit. As testified by Mr. Hazard, he made no objection to the transaction; imputed no blame to the plaintiffs, and expressed his regret at the probable loss. Mr. Spears, himself, testifies that he did not feel it his duty to be frank with the plaintiff, or to tell him that he would be held liable for the sale of the hams.

Under the circumstances stated, the title to the property thus in the hands of Purdue & Ward, was in the defendants. If a change in the market had occurred, by which the price had advanced, the benefit would have accrued to the defendants, and not to the plaintiffs. The sale to Perry was made by the plaintiffs, as the agents of the defendants, and upon his failure to perform, as such agents, they resumed the possession of the property. They, as such agents, also, left it with Purdue & Ward for sale, without limit as to price. All this was communicated to Spears in person. If he wished to repudiate what had taken place, and to countermand the directions for sale, given in behalf of his firm, and to hold the plaintiffs to the first instructions, it was his duty to have done it promptly. It should have been done on the spot, or certainly within a few days. In fact, there was no renunciation or countermand until September 5, thereafter, although a doubt upon the subject of their liability to bear the loss was intimated in a letter of August 8.

In Prince *v.* Clark, 1 *Barn. & C.* 186; 8 *Eng. C. L.* 80, the plaintiff had shipped by the defendant certain goods to the East Indies for sale, with directions to invest the proceeds in specified articles. The defendant invested the amount in Benares sugar, which was not one of the specified articles, and advised the plaintiff of the purchase by a letter, received by him on May 29. The plaintiff made no objection until August 7, when he notified the defendant's agent that he disowned the purchase. The jury held, that by his delay he had assented to the acts of the agent, and the court of king's bench affirmed their verdict.

BAILEY, J., says: "The principal has no right to pause and wait the fluctuation of the market, in order to ascertain whether the purchase is likely to be beneficial. He is bound, if he dissents, to notify his determination within a reasonable time."

HOLROYD, J., says: "I think the jury might fairly infer from the facts of the case, that the plaintiff did once assent to take the cargo on his own account, or that he meant, at least, to take the chance of the market."

It was objected, in that case, that the defendant had no agent to whom notice could be given, and that he could receive no benefit from the notice. The court held, nevertheless, that an agent might have been found by inquiry, and that the verdict was justified.

The defendants insist that this principle does not affect this case, because, they say, that Howe was liable on the draft given up to Perry; that he was solvent, and that Spears was not advised of this state of things by Hazard in the June conversation. There are two answers to this objection. It does not appear that Howe was personally liable on the drafts drawn on the produce shipped. It appears, very distinctly, that he was acting in the transaction of the purchase, as the agent of Perry, and thus without interest. Whether the drafts drawn by him upon Perry were drawn as agent, or whether he voluntarily made himself liable upon them, is not proved, and, I think, cannot be assumed. Another, and quite a satisfactory answer is this, that no such point was raised on the trial. If the defendant claimed that the conversation and the delay to repudiate, did not furnish evidence of assent, because Spears

was not informed of the fact that Howe was liable on the drafts, and was solvent, he should have called attention, on the trial, to the precise point of which he complained. It was plainly stated that the drafts, whatever they were, were given up to Perry as a means of obtaining the return of the property. This, the defendant Spears certainly knew, and if he had not been informed of the other alleged facts, and had, on the trial, placed himself on that ground, the plaintiffs would then have had the opportunity of showing how the facts were, and what was the statement of them to Spears. To allow it now to be urged, when it was omitted at the proper time, would be quite unjust. The point is of frequent occurrence, and we rule upon it at nearly every term.

In the same manner the defendants object, that Spears was not informed by Hazard that the sale was in fact to Perry and not to Howe. If this fact is of importance, the answer to the objection is the same as that given to the preceding one, that attention was not called to it on the trial.

The defendants also insist that the judge erred in refusing to charge, that if, in the conversation referred to, Hazard did not entertain the idea of procuring a ratification, and Spears did not intend to ratify the plaintiffs' acts, there was no ratification. If Hazard's testimony is to be relied upon,—and it was believed by the jury,—he had acted, as he supposed, faithfully and honestly in the discharge of his duty as the defendants' agent, in making the sale, in recapturing the property, and in directing its resale by Purdue & Ward, at the best price that could be obtained. Upon the first opportunity he communicates all the facts orally to Mr. Spears. The question then is, what is the legal effect of all this, with the answers of Spears in connection? If both Hazard and Spears had certainly thought that the transaction was right in itself and could not be disturbed or repudiated, and that no ratification could improve it, and therefore had no intention on the subject, would that have altered the legal effect of what they said and did? Or if Spears was satisfied that he had an advantage of Hazard, and meant to stand upon his strict rights, and at some convenient time to assert them, and yet, upon a full and frank statement of all the facts, made no visible or audible repudia-

tion of the transaction, would he not have been concluded by his silence? The case of Prince v. Clark is clear to the point that he would be. The law passes its judgment upon, and gives legal effect to, what is said and done. Intentions, except as they are manifested by the acts and statements of the parties, are of no avail.

I see no difficulty from the allowance of commissions, nor from the other objections to the rulings on the trial.

Judgment should be affirmed, with costs.

CLERKE, J.—The only question in this case is whether the defendants ratified the sale ordered by the plaintiffs in New York. After the latter ordered the sale, they communicated with the defendants, giving them a complete history of the transaction, their letter being dated May 20, 1861. The defendants wrote an answer, regretting the trouble that the plaintiffs had in respect to the hams, and expressing a hope, that the eighteen hundred dollars which they had received from Howe, would make good all their losses, and that they would be paid for their extra trouble. There was other evidence of acquiescence. All this was properly left to the jury, to determine whether it proved a ratification.

The judgment should be affirmed, with costs.

A majority of the judges concurred in affirming the judgment.

Judgment affirmed, with costs.